IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BERKADIA COMMERCIAL | § | |
| MORTGAGE LLC, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-2368 |
| | § | |
| CROSS BRIDGE TITLE LLC and | § | |
| OLD REPUBLIC NATIONAL TITLE | § | |
| INSURANCE COMPANY, | § | |
|     Defendants. | § | |

## PLAINTIFF BERKADIA COMMERCIAL MORTGAGE LLC'S
## ORIGINAL COMPLAINT

Plaintiff Berkadia Commercial Mortgage LLC files its Original Complaint against Defendants Cross Bridge Title LLC and Old Republic National Title Insurance Company as follows:

### I.    PARTIES

1.    Plaintiff Berkadia Commercial Mortgage LLC ("Berkadia") is a Delaware limited liability company authorized to do business in Texas.

2.    The members of Berkadia Commercial Mortgage LLC are Berkadia Proprietary Holding LLC, a Delaware limited liability company, and Berkadia Commercial Mortgage Partners LLC, a Delaware limited liability company.

3.    The sole member of Berkadia Proprietary Holding LLC is Berkadia Commercial Mortgage Holding LLC, a Delaware limited liability company.

4.     The members of Berkadia Commercial Mortgage Holding LLC are Columbia Insurance Company, a Nebraska corporation having its principal place of business in Nebraska, and LUK Servicing, LLC, a Delaware limited liability company.

5.     The sole member of LUK Servicing, LLC is Jefferies US Holdings LLC, a Delaware limited liability company.

6.     The sole member of Jefferies US Holdings LLC is Jefferies Financial Group Inc., a New York corporation having its principal place of business in New York.

7.     The members of Berkadia Commercial Mortgage Partners LLC are Columbia Insurance Company, a Nebraska corporation having its principal place of business in Nebraska, and LUK Servicing, LLC, a Delaware limited liability company.

8.     The sole member of LUK Servicing, LLC is Jefferies US Holdings LLC, a Delaware limited liability company.

9.     The sole member of Jefferies US Holdings LLC is Jefferies Financial Group Inc., a New York corporation having its principal place of business in New York.

10.     Thus, for purposes of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, Berkadia is a citizen of the states of New York and Nebraska.

11.     Defendant Cross Bridge Title LLC ("Cross Bridge") is a New Jersey limited liability company with its principal place of business in New Jersey. Cross Bridge registered with the Secretary of State to transact business in Texas but forfeited its registration on or about June 24, 2022 pursuant to Texas Tax Code § 171.309. Cross Bridge therefore may be served with process through the Texas Secretary of State, Service of Process, James E. Rudder Building, 1019 Brazos Street, Room 105, Austin, Texas 78701. *See* Tex. Bus. Org. Code § 5.251(1)(A). Cross Bridge also

may be served with process through its registered agent Hermann Vorhand, at 4667 Route Nine North, Howell, New Jersey 07731. *See* Fed. R. Civ. P. (h)(1)B).

12.     Defendant Old Republic National Title Insurance Company ("Old Republic") is a Florida corporation with its principal place of business in Florida. Old Republic is authorized to do business in Texas and may be served with process through its registered agent, John T. Updegraff, Jr., at 2591 Dallas Parkway, Suite 102, Frisco, Texas 75034.

## II.    JURISDICTION AND VENUE

13.     The Court has subject-matter jurisdiction over this suit under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs.

14.     The Court has personal jurisdiction over Defendants because they have purposely directed their activities at Texas and purposefully availed themselves of the privileges and benefits of conducting business in Texas, and Berkadia's causes of action arise out of or result from those activities. Old Republic issued a title policy and closing protection letter in Texas on forms promulgated by the Texas Department of Insurance in the transaction concerning real property located in Houston, Texas that is the subject matter of this suit. Cross Bridge served as an escrow and title agent in the transaction.

15.     The Court additionally has personal jurisdiction over Defendants because Defendants engage in business in Texas and have registered with the Secretary of State to do so. They therefore have continuous and systematic contacts with Texas such that requiring them to defend themselves in this forum does not violate traditional notions of fair play and substantial justice.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

### III.  FACTS

17.     In late April 2023, Yuri Kletsman ("Kletsman"), a mortgage banker at Berkadia, was approached by Elya Kahn ("Kahn"), a broker at Greenrock Funding LLC, regarding a loan for the purchase of a 326-unit multifamily property in Houston known as the Virtuo Med Center Apartments ("Virtuo" or the "Property"). The sponsor of the proposed loan borrower was Mordichai Weiss of "Weiss Property Group" ("Weiss"), which the broker claimed managed thousands of units nationwide, including nearly 700 in Houston. Weiss was seeking $69 million to assist in an alleged $97.8 million purchase of Virtuo, to be financed under the Federal Home Loan Mortgage Corporation ("Freddie Mac") Capital Markets Execution ("CME") program.

18.     What Berkadia did not know was that the proposed transaction and the documents supporting it were fraudulent. Weiss, Kahn, and Cross Bridge—the title and escrow agent—worked together to create a paper trail "documenting" a sham transaction with an inflated sales price to support a larger loan than Berkadia otherwise would have made had it known the truth. For its part, Cross Bridge generated a fraudulent title insurance commitment issued by Old Republic and fraudulent settlement statements to induce Berkadia into issuing a $68,460,000 loan.

### A.  The PSA

19.     On or about May 3, 3023, Kahn provided Kletsman a Purchase and Sale Agreement ("PSA") dated March 17, 2023 between TMC Grand Apts #1, LLC as seller and Weiss as purchaser. According to the PSA, the purchase price of the Property would be $97,800,000. The PSA provided to Berkadia was fraudulent—the actual sales price was approximately $67,000,000, as evidenced

by the "real" title insurance commitment and settlement statement later mistakenly sent to Berkadia.

20.     After reviewing the PSA and other documents, including but not limited to inflated rent rolls, Berkadia ultimately approved a loan in the amount of $68,460,000, to be purchased by Freddie Mac.

**B.  The Title Insurance Commitment**

21.     On or about May 24, 2023, Berkadia received a title insurance commitment issued by Old Republic on April 24, 2023. The commitment described only an Owner's policy in the amount of $67,156,000—which was not the $97,800,000 purchase price as represented to Berkadia by Weiss and Kahn.

22.     Days later, without explanation, Berkadia received an entirely different title insurance commitment issued by Old Republic on May 24, 2023. This commitment now described an Owner's policy in the amount of $97,800,000, aligning with the PSA provided to Berkadia.

23.     Both title insurance commitments listed "Virtuo Med Center Apts LLC, a New York limited liability company"—not Weiss—as the Proposed Insured. Importantly, neither version of the commitments identified Berkadia as the lender nor provided any information about a concomitant Lender's policy.

24.     Berkadia believes the April document was the actual title insurance commitment for the real $67,000,000 transaction. The May document was fake, generated for the sole purpose of supporting the fraudulently proffered $97,800,000 transaction.

25.     Cross Bridge was Old Republic's agent with respect to the title insurance commitment, as well as the title insurance policy and closing protection letter issued at closing. Specifically, Cross Bridge acted as Old Republic's agent when, among other things, it solicited title insurance on behalf of Old Republic, received or transmitted the title insurance application to

or from Old Republic, received or transmitted the Old Republic title insurance commitment, received or transmitted the Old Republic title insurance policy, received, collected, or transmitted the title insurance premium, and took other actions in the making or consummation of the title insurance contract(s) for or with Old Republic. Cross Bridge acted within the scope of its authority granted by Old Republic in taking these actions with respect to the title insurance commitment, title insurance policy, and closing protection letter issued to Berkadia described herein.

**C.  The Escrow Instructions**

26.     The day before closing, on June 12, 2023, Berkadia's counsel delivered escrow closing instructions ("the Escrow Instructions") to Asher Rendler ("Rendler") at Cross Bridge, the title company handling the transaction. Rendler countersigned the instructions the following day on behalf of Cross Bridge.

27.     The escrow closing instructions required Cross Bridge to satisfy several conditions before disbursing the loan proceeds. Among other things, Cross Bridge was required to deliver to Berkadia a copy of the approved settlement statement signed by both Cross Bridge and the borrower:

> We must receive a PDF copy of (i) the executed settlement statement approved by Lender, signed by both you and Borrower (the "**Settlement Statement**") and (ii) these executed Escrow Instructions. **Funds will not be wired unless these items are in Lender's file.**

Cross Bridge never delivered the approved and executed settlement statement.

**D.  The Settlement Statements**

28.     The settlement statement Cross Bridge provided to Berkadia prior to closing listed the sale price of the Property as $97,800,000 and the loan amount as $68,460,000, with approximately $29,300,000 due from the Borrower. This reflected Berkadia's understanding of the transaction and the circumstances under which Berkadia agreed to fund the loan. Specifically,

Berkadia believed the Borrower's equity would be approximately $29,300,000 in a property worth $97,800,000. Had Berkadia known it was funding essentially 100% of the purchase price, it would not have funded the loan.

29.    On June 14, 2023, the following morning, Berkadia's closer noticed that the signed settlement statement did not match the Freddie Mac Letter of Commitment ("Freddie Mac Commitment"). Exhibit D-1 to the Freddie Mac Commitment required a signed settlement statement naming the buyer and seller and demonstrating a minimum purchase price of $97,800,000. The settlement statement provided to Berkadia did not reflect the buyer, Weiss, or the seller, TMC Grand Apts #1 Mezz, LLC, named in the Freddie Mac Commitment.

30.    Berkadia, through counsel, emailed Rendler and Michael Hirschler ("Hirschler"), also at Cross Bridge, requesting corrections to the title insurance commitment to match the parties named in the Freddie Mac Commitment. That afternoon, Rendler and Hirschler sent Berkadia at least three different versions of the settlement statement in response.

31.    First, around 3:07 p.m., Rendler sent Berkadia a settlement statement he described as the "final version signed and used." This version listed the sale price of the Property as $66,906,000—not $97,800,000. Berkadia believes that this was the true settlement statement.

32.    A few minutes later, around 3:10 p.m., Rendler sent another email: "Please sorry I am crossing my files, please disregard will send shortly." "Crossing files" in no way explains how or why a signed settlement statement represented to be the "final version signed and used" listed an approximately $67,000,000 purchase price for the Property when the purchase price in all of the other transaction documents was $97,800,000.

33.    A few minutes after that, around 3:13 p.m., Hirschler sent Berkadia a second version of the settlement statement. Although the settlement statement again conformed to the

7

fraudulent $97,800,000 purchase price, it did not incorporate the changes requested to accurately reflect the identity of the seller and buyer as required by the Freddie Mac Commitment.

34.     Within a few minutes, around 3:21 p.m., Hirschler sent Berkadia yet another, third version of the settlement statement, stating "it didn't attached [sic] the fully signed with buyer's name and settlement signed." This final executed version of the settlement statement included a sale price of $97,800,000, a loan amount of $68,460,000, and approximately $29,000,000 due from the borrower. The buyer/borrower and seller were still incorrectly named as TMC Grand Apts #1, with "Mordechai Weiss, Managing Member" (misspelling Weiss's first name) listed below the signature.

35.     Like the prior versions, this version of the settlement statement did not accurately describe the Seller or the Buyer in the transaction or the true purchase price. Berkadia has no reason to believe the Borrower ever contributed any of the required equity. As a result, the settlement statement did not meet the conditions of the Freddie Mac Commitment. By not providing Berkadia with a correct settlement statement for the transaction, Cross Bridge failed to comply with the escrow closing instructions.

36.     Cross Bridge also was an active participant in the fraud, as evidenced by its sending to Berkadia both the true and the fraudulent versions of the title insurance commitment and the settlement statements while offering flimsy, if any, excuses.

**E.  The Title Insurance Policy and Closing Protection Letter**

37.     In connection with the closing, Old Republic issued a loan policy of title insurance (No. TL08774910) in the amount of $68,460,000 in favor of Berkadia and/or Freddie Mac and provided a closing protection letter (Ref: 974385466 – TX50) in favor of Berkadia and/or Freddie Mac.

38.     Closing protection letters ("CPLs") are provided by national, reputable title insurance underwriters for the very purpose of protecting transactional parties, such as sellers, buyers and lenders, from the wrongdoings of smaller, local agents as these transactional parties fund, await, or receive millions or hundreds of millions of dollars through these transactions.

39.     Through the CPL, Old Republic agreed to reimburse Berkadia for its actual losses incurred in connection with the closing, provided that, among other things, the losses arise out of:

(1) the Closing Agent's failure to comply with Berkadia's written closing instructions to the extent that they relate to (a) the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, including the obtaining of documents and the disbursement of funds necessary to establish the status of title or lien, or (b) the obtaining of any other document, specifically required by Berkadia, but only to the extent the failure to obtain the other document affects the status of the title to that interest in land or the validity, enforceability and priority of the lien of the mortgage on that interest in land, and not to the extent that your instructions require a determination of the validity, enforceability or the effectiveness of the other document; or

(2) fraud or dishonesty of the Closing Agent in handling Berkadia's funds or documents in connection with the Closing to the extent that fraud or dishonesty relates to the status of the title to that interest in land or to the validity, enforceability, and priority of the lien of the mortgage on that interest in land.

**F.  Berkadia's Loss**

40.     Weiss and/or TMC Grand Apts #1, LLC stopped making payments on the loan. In November 2023, Berkadia sent a notice of default and acceleration to TMC Grand Apts #1, LLC and Weiss.

41.     Freddie Mac, which had purchased the loan from Berkadia, moved for the appointment of a receiver. On March 6, 2024, Freddie Mac foreclosed on the Property. Thereafter, Berkadia was forced to enter into a lease and indemnity agreement with Freddie Mac.

42.     Pursuant to its agreement with Freddie Mac, Berkadia must, by March 2026, pay off the $68,460,000 loan, plus interest unpaid by the borrower accrued up to the time of foreclosure. Berkadia is also being charged a carrying fee in the amount of the secured overnight financing rate plus a spread and has incurred other costs.

43.     Freddie Mac obtained an appraisal valuing the Property at approximately $44 million, subjecting Berkadia to a loss of over $24 million in addition to the carrying fee and other charges imposed by Freddie Mac and its legal fees, none of which would have been incurred but for Cross Bridge's fraud.

44.     Despite Berkadia's written demand for indemnity, Old Republic has refused to provide it.

## IV. CAUSES OF ACTION

### *Cause of Action One*:
### *Fraud*
### *(Cross Bridge and Old Republic)*

45.     Berkadia incorporates and realleges each prior paragraph.

46.     In the false settlement statements, false title insurance commitment, and correspondence concerning the making or consummation thereof, Cross Bridge represented to Berkadia that the purchase price of the Property was $97,800,000 and that the Borrower would contribute approximately $29,000,000 in cash.

47.     Cross Bridge's representations to Berkadia were material because Berkadia would not have agreed to make the loan if it knew the truth—that the purchase price of the Property was approximately $67,000,000 and the Borrower was not contributing any cash toward the purchase price.

48.     Cross Bridge's representations to Berkadia were false statements of fact.

10

49.     Cross Bridge made the representations knowing they were false. It was in possession of the actual title insurance commitment as well as the actual signed settlement statement, which it mistakenly sent to Berkadia with the explanation that it was "crossing files."

50.     Cross Bridge intended for Berkadia to rely on the false representations in the title insurance commitment and settlement statements and used them to cause Berkadia to disburse the loan funds.

51.     Berkadia justifiably relied on Cross Bridge's false representations when it wired the loan funds to Cross Bridge.

52.     Cross Bridge's false representations related to and affected the status of the title to the Property and/or the validity, enforceability, and/or priority of the lien on the Property.

53.     Cross Bridge made the false representation(s) in the false title insurance commitment and correspondence concerning the making or consummation thereof when acting as Old Republic's agent and in the scope of that agency.

54.     Cross Bridge's false representations directly and proximately caused injury to Berkadia, which resulted in damages including, but not limited to, the difference between the $68,460,000 loan and the sale price of the Property, the carrying fee and other charges imposed by Freddie Mac, and legal fees associated with the transaction.

55.     Berkadia's injury resulted from Cross Bridge's malice, fraud, or gross negligence, which entitles Berkadia to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

### *Cause of Action Two*:
### *Fraud by Nondisclosure*
### *(Cross Bridge)*

56.     Berkadia incorporates and realleges each prior paragraph.

11

57.    In addition, Cross Bridge committed fraud by nondisclosure.

58.    Cross Bridge had a duty to disclose the true nature of the transaction to Berkadia because Cross Bridge had a fiduciary relationship with Berkadia as the escrow agent.

59.    The information was material because Berkadia would not have agreed to make the loan if it knew the true nature of the transaction—that the purchase price of the Property was approximately $67,000,000 and the Borrower was not contributing any cash toward the purchase price.

60.    Cross Bridge knew Berkadia was ignorant of the true nature of the transaction and did not have an equal opportunity to discover the truth.

61.    Cross Bridge deliberately remained silent and did not disclose the true nature of the transaction to Berkadia.

62.    By deliberately remaining silent, Cross Bridge intended for Berkadia to fund the loan without knowing the true nature of the transaction.

63.    Berkadia reasonably and justifiably relied on the deliberate silence of Cross Bridge, which had a fiduciary duty to Berkadia to make full disclosure, among other duties.

64.    Cross Bridge's deliberate silence related to the status of the title to the Property and/or the validity, enforceability, and/or priority of the lien on the Property.

65.    By deliberately remaining silent, Cross Bridge proximately caused injury to Berkadia, which resulted in damages including, but not limited to, the difference between the $68,460,000 loan and the sale price of the Property, the carrying fee and other charges imposed by Freddie Mac, and legal fees associated with the transaction.

66.     Berkadia's injury resulted from Cross Bridge's malice, fraud, or gross negligence, which entitles Berkadia to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

### *Cause of Action Three*:
### *Negligent Misrepresentation*
### *(Cross Bridge and Old Republic)*

67.     Berkadia incorporates and realleges each prior paragraph.

68.     In the alternative, Cross Bridge committed negligent misrepresentation.

69.     In the false settlement statements, false title insurance commitment, and correspondence concerning the making or consummation thereof, Cross Bridge represented to Berkadia that the purchase price of the Property was $97,800,000 and that the Borrower would contribute approximately $29,000,000 in cash.

70.     Cross Bridge made the representations in the course of its business as the title and escrow agent in the transaction.

71.     Cross Bridge made the representations in the course of the transaction, in which it had a pecuniary interest.

72.     Cross Bridge made the representations for the guidance of others, including but not limited to Berkadia.

73.     Cross Bridge's representations were misstatements of fact and failures to disclose the true nature of the transaction—that the purchase price of the Property was approximately $67,000,000 and the Borrower was not contributing any cash toward the purchase price—when Cross Bridge had a duty to do so as the escrow agent.

74.     Cross Bridge did not use reasonable care in communicating the misstatements and failing to communicate the true nature of the transaction.

13

75. Cross Bridge's representations related to and affected the status of the status of the title to the Property and/or the validity, enforceability, and/or priority of the lien on the Property.

76. Berkadia actually and justifiably relied on Cross Bridge's representations when it agreed to fund the loan and eventually wired the loan funds to Cross Bridge.

77. Cross Bridge's false representations proximately caused injury to Berkadia, which resulted in damages including, but not limited to, the difference between the $68,460,000 loan and the sale price of the Property, the carrying fee and other charges imposed by Freddie Mac, and legal fees associated with the transaction.

78. Cross Bridge made the false representation(s) in the false title insurance commitment and correspondence concerning the making or consummation thereof when acting as Old Republic's agent and in the scope of that agency.

79. Berkadia's injury resulted from Cross Bridge's gross negligence, which entitles Berkadia to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a)(3).

### *Cause of Action Four*:
### *Breach of Fiduciary Duty*
### *(Cross Bridge)*

80. Berkadia incorporates and realleges each prior paragraph.

81. In addition, Cross Bridge committed breaches of fiduciary duty.

82. As its escrow agent, Cross Bridge owed Berkadia fiduciary duties, including but not limited to the duty of loyalty, the duty to make full disclosure, and the duty to exercise a high degree of care to conserve Berkadia's funds and pay only those entitled to receive them.

83. Cross Bridge breached its fiduciary duties to Berkadia by making false representations to Berkadia regarding the true nature of the transaction—that the purchase price of the Property was approximately $67,000,000 and the Borrower was not contributing any cash

toward the purchase price—to benefit itself and by releasing the loan funds to Weiss and/or TMC Grand Apts #1 after having failed to provide an accurate settlement statement to Berkadia.

84.     Cross Bridge's breaches of fiduciary duty related to the status of the title to the Property and/or the validity, enforceability, and/or priority of the lien on the Property.

85.     Cross Bridge's breaches of fiduciary duty caused injury to Berkadia, which resulted in damages including, but not limited to, the difference between the $68,460,000 loan and the sale price of the Property, the carrying fee and other charges imposed by Freddie Mac, and legal fees associated with the transaction.

86.     Berkadia's injury resulted from Cross Bridge's malice, fraud, or gross negligence, which entitles Berkadia to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

***Cause of Action Five*:**
***Breach of Contract***
***(Old Republic)***

87.     Berkadia incorporates and realleges each prior paragraph.

88.     Berkadia and Old Republic had a valid written agreement. Old Republic issued Berkadia a closing protection letter in connection with the closing of the Property transaction. In the closing protection letter, Old Republic agreed to indemnify Berkadia for loss arising out of Cross Bridge's failure to follow Berkadia's written closing instructions or Cross Bridge's fraud or dishonesty in handling Berkadia's funds or documents in connection with the closing to the extent that the failure to follow Berkadia's written closing instructions or fraud or dishonesty related to the status of the title to the Property and/or the validity, enforceability, and/or priority of the lien on the Property.

89.     Berkadia performed its obligations under the closing protection letter.

90.    Old Republic breached the closing protection letter when it failed and refused to indemnify Berkadia for Cross Bridge's (a) failure to follow Berkadia's written closing instructions including, but not limited to, by failing to provide an accurate settlement statement to Berkadia and (b) fraud or dishonesty in handling Berkadia's funds or documents in connection with the closing. This misconduct by Cross Bridge related to the status of the title to the Property and/or the validity, enforceability, and/or priority of the lien on the Property and is precisely the nature of the conduct that the commercial real estate industry seeks to protect against when obtaining a closing protection letter from national underwriters.

91.    Old Republic's breaches caused injury to Berkadia, which resulted in damages including, but not limited to, the difference between the $68,460,000 loan and the sale price of the Property, the carrying fee and other charges imposed by Freddie Mac, and legal fees associated with the transaction.

92.    Berkadia is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code chapter 38 because this suit is for breach of a written contract. Berkadia retained counsel, who presented its claim to Old Republic. Old Republic did not tender the amount owed within 30 days after the claim was presented.

## V.    Conditions Precedent

93.    All conditions precedent have been performed or excused.

## VI.    Conclusion

Plaintiff Berkadia Commercial Mortgage LLC requests that upon final trial of this case, it have and recover judgment of and against Defendants Cross Bridge Title LLC and Old Republic National Title Insurance Company as follows:

a.    actual damages;

16

b.  exemplary damages;

c.  reasonable and necessary attorneys' fees under Texas Civil Practice & Remedies Code chapter 38;

d.  for prejudgment interest on all amounts unlawfully retained at the statutory rate until final judgment;

e.  for postjudgment interest at the highest amount permitted by law on all amounts awarded until paid;

f.  costs of court; and

g.  all other and further relief to which it may show itself to be justly entitled.

Respectfully submitted,

BERG PC

By: _____/s/ Geoffrey Berg_____

Geoffrey Berg (gberg@bergpc.com)

Texas Bar No. 00793330

S.D. Tex. Bar No. 19455

3700 Buffalo Speedway, Suite 1150

Houston, Texas 77098

713-526-0200 (tel)

832-615-2665 (fax)

*Attorney-in-Charge for Plaintiff*

*Berkadia Commercial Mortgage LLC*

Kathryn E. Nelson (knelson@bergpc.com)

Texas Bar No. 24037166

S.D. Tex. Bar No. 36108

BERG PC

3700 Buffalo Speedway, Suite 1150

Houston, Texas 77098

713-526-0200 (tel)

832-615-2665 (fax)

*Of Counsel*